**In the Interest of T. J. A., P. A. A., R. S. A., S. J. A. A., B. G. A. and M. J. A.**

No. 24503.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1966.

David R. Freeman, Freeman & Williamson, Independence, for appellant.

Stephen R. Pratt, North Kansas City, attorney and guardian ad litem for T. J. A. and others.

SPERRY, Commissioner.

This action was instituted in the juvenile court in the interest of the within named children upon the filing therein of a petition by the juvenile officer of Clay County, under the provisions of Chapter 211, R.S.Mo. 1959, V.A.M.S. It was alleged that said children were in need of care and treatment under the supervision of the court. A number of hearings were held, over a period

of several months, resulting in a judgment whereby T. J. A., then 16 years of age, was ordered placed in a foster home under the jurisdiction of the court, and her three younger sisters named above, P. A. A., R. S. A. and S. J. A. A. were ordered to remain in the home of their parents under the supervision, general guidance and control of the juvenile court. The court retained jurisdiction of all of the children until each should reach the age of twenty-one. The parents of the children, B. G. A. and M. J. A., who were parties to the proceedings and were present and participated therein, in person and by attorney, appealed.

The appeal was to the Supreme Court but it was, by mandate, transferred to this court for lack of jurisdiction in the Supreme Court. A motion was filed to dismiss the appeal but, in the public interest, we will review the case and rule the appeal.

The transcript is in four sections, each relating to a separate hearing. The testimony took a wide range and is, in many instances, conflicting.

At the conclusion of all of the hearings the court made the following pertinent findings, to-wit:

That the father drinks to excess. That he has struck his wife; that the said parents engage in quarreling and fighting in the presence of the children; that on six occasions he had sexual relations with a witness; that while married to his present wife he had sexual relations with a 16 year old girl causing her to become pregnant; that he caused his present wife to obtain a divorce so that he might marry the girl with the understanding that he would return to her later; that he did marry the girl, the child was born and she became pregnant again giving birth to another child; that while married to this girl he caused his present wife to become pregnant; that the girl divorced him and he remarried his present wife and the child was born to them; that he and his wife permit these children born

to his second wife to come and remain in their home and these facts were known to his children and many others. The court further finds that M. J. A. is an extremely weak character; that in the presence of her husband she is practically helpless and is governed entirely by his will and desires; that the conditions in the home are injurious to the welfare of all the children and particularly as to the child T. J. A.

That each and all of the children are in need of the care and protection of the court.

■ In this type of case we will review the record de novo but we defer to the trial court's finding unless it is clearly erroneous. H——— v. D———, 373 S.W.2d 646, 654 (Mo.App.). The court said, in the above case (654):

"Insofar as it is reasonably possible, the court should not only assure itself that the home is one in which the conventions and mores of the day are scrupulously observed, but should inquire as diligently as possible into the home environment and the surroundings in which the child will be reared".

We have scrupulously read and considered this entire record. The conditions shown to exist in the home are such that the children are in dire need of relief. T. J. A. left home and reported the situation to the juvenile authorities. M. J. A., the mother, was notified thereof and went to the juvenile office where she made and signed written statements, as did T. J. A., wherein the deplorable situation of T. J. A. was shown. The mother then secured the services of Dr. Lytton, an eminent psychiatrist, upon whose advice T. J. A. was hospitalized and given psychiatric treatment, including electrical sleep. He testified to the effect that she should not be remanded to the custody of her parents or be compelled to live in the home. He also recommended that, if the three younger girls were remanded to the custody of the

parents, they should be closely supervised by juvenile authorities while in their home.

██ The findings of the court herein are fully supported by the record, and, in the opinion of this court, the order and judgment is in the best interests of the children, and of the public.

The record discloses that the father of these children sexually molested T. J. A., in the home and elsewhere, a number of times; that such conduct first began when she was from nine to eleven years of age and continued until she left home and complained to the juvenile authorities; that he was extremely cruel to T. J. A. when he was intoxicated, and punished her in such a manner as to endanger her health; that the mother and wife, M. J. A., had knowledge of her husband's conduct in these matters. There is no substantial evidence tending to prove that the father was guilty of such misconduct as to the three younger children. T. J. A. greatly fears her father, and, likely, would not live at the home if ordered by the court to do so. It would be inimical to her mental and physical health and well being to compel her to live in the home with her father. We can see no real present threat, morally or physically, to the smaller children if they would continue to live in the home of the parents. However, they should be kept under the close supervision of competent juvenile officers so that their future welfare will be protected.

For the above reasons, as shown by the record, the judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

HOWARD and BLAIR, JJ., concur.

CROSS, P. J., not participating.